## JOSEPH W. REYNOLDS v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 1, 1912.

Nos. 17,605—(44).

**Quære.**

> *Quære.* As between a landowner and a tort feasor, and in the absence of any act of severance on the part of the owner, is timber which has been felled by the act of God to be considered realty or personalty?

**Measure of damages.**

> The true measure of the damages for the injury to and destruction of standing forest trees by fire, is the diminution in the value of the land caused by such injury.

**Fire — charge to jury.**

> Instructions in an action based upon injury to and destruction of standing forest trees and fallen timber, by fire set by the defendant's negligence, considered and *held* to give the plaintiff full benefit of his contention that he was entitled to recover for the destruction of the fallen timber in its

---

[1] Reported in 138 N. W. 30.

condition as it then·lay on the ground, as well as for the injury to the standing trees.

**Evidence of value.**

In an action based upon the destruction of standing forest timber by fire, evidence of the value of the timber itself is admissible, not as defining the measure of damages, which is the diminution of the value of the land, but as being proper to be considered by the jury in applying the true measure and ascertaining the amount of the damages suffered.

**Verdict.**

Damages for the destruction by fire of standing and fallen timber, *held* not so manifestly insufficient as to require interference with the verdict awarding the same.

Action in the district court for Itasca county to recover $10,000 for the destruction of timber, lumber, cord wood, mining timber, poles and posts. The answer alleged that if plaintiff suffered any damage by reason of any fire, the same was caused or contributed to by his negligence. The case was tried before Stanton, J., and a jury which returned a verdict in favor of plaintiff for $800. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*S. F. White,* for appellant.
*Baldwin & Baldwin,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages for the destruction by fire, set by the defendant, of standing and fallen timber on thirteen forties of the plaintiff's two thousand acre farm in Itasca county. The cause was tried to a jury, who returned a verdict in favor of the plaintiff, and this is an appeal by him from an order denying his application to set aside the verdict and for a new trial.

It is undisputed that the plaintiff owned the land referred to and had on the forties mentioned a considerable quantity of standing and uncut fallen forest timber, consisting of birch, maple, cedar, basswood, tamarack, etc., trees, which were injured and destroyed by fire negligently set by the defendant, all of which timber, both

standing and down, was then valuable and marketable, if it had been cut, for various uses, and had an established market value.

The questions involved on this appeal relate wholly to damages. "The one dominating question," says the plaintiff in his brief, "arises upon the rule of damages adopted by the court." Before considering this question, however, we deem it necessary to advert to the proceedings had upon the trial, and to some questions raised thereby, prior to the instructions.

The court permitted the plaintiff to introduce evidence, without limitation, tending to show the kinds, quality, amount, and value, both of his standing and down timber, separately and together, and also the extent of the injury to all of his timber which the plaintiff claimed was destroyed, and also the further fact that, if such timber had been cut when the fire occurred, it would have had a market at an established, stated, cash price. The plaintiff contends, furthermore, that the trial was conducted on his part upon the theory that his timber, whether standing or lying, was all convertible into commodities, for which there was an established market value; that his damages consisted of such market value, less the cost of marketing; and all the evidence on his part was introduced upon such theory and no evidence was offered as to the injury to the land, and that in no instance did any witness testify as to the value of the land before and after the fire. The record is somewhat obscure, but as we read it the plaintiff's counsel is mistaken concerning the facts last stated. At folio 34 of the paper book, we find the following testimony introduced, as we understand it, by the plaintiff. Q. "Mr. Anderson, are you acquainted with the value of lands in the neighborhood where you reside, independent of timber, lands that have no timber on, for instance? A. Yes, sir. Q. Are you acquainted with the value of timber also? A. Yes, sir. Q. Now, what would be the value of these lands, on the average,—I think there are fourteen forties,—considered entirely independent of any timber at the time this fire occurred? A. Six or seven dollars an acre. Q. And with the timber, Mr. Anderson, would those lands be worth six or seven dollars an acre, plus the net profit which you have mentioned for the various products? A. Yes, sir. You mean, yes."

But assuming that the record is as claimed by the plaintiff in this regard, we will say, in passing, that if it should subsequently develop in the course of our consideration that the court, in its instructions, gave the correct rule of damages, the only possible objection thereto in this connection would be that the instruction did not conform to the evidence, and this would not be available to the plaintiff, for it would simply amount to a failure on his part to prove an essential element of his cause of action, namely, his damages, which, of course, would be no ground for granting him a new trial.

The plaintiff, in logically following his stated theory, made no particular distinction in his proofs between the separate values of the standing and the down timber, the proofs concerning the value of each shading into that of the other, and the plaintiff's effort evidently being to prove the gross amount of his damages occasioned by the destruction of both the standing and the down timber, irrespective of the precise and separate value of either.

On the other hand, the defendant claimed, to state it in the language of his counsel used on the trial, that "the measure of damage is the difference between the value of that land as it stood before the fire and the value of that land as it stood after the fire, and in whatever way that be arrived at by evidence, is the true basis of damages." The defendant further insists, in support of his contentions, that timber severed from the land by an act of God remains realty as between grantor and grantee and passes by a conveyance of the land, which proposition seems to be sustained by the authorities. See Ewell, Fixtures, 457; Duff v. Bindley, 16 Fed. 178. The rule is well stated in Leidy v. Proctor, 97 Pa. St. 486, 492, quoting from Rogers v. Gilinger, 6 Casey, 185, as follows: "What then is the criterion by which we are to determine whether that which was once part of the realty has become personalty on being detached? Not capability of restoration to the former connection with the freehold, as is contended, for the tree prostrated by the tempest is incapable of reannexation to the soil, and yet it remains realty. The true rule would rather seem to be, that which was real shall continue real until the owner of the freehold shall by his election give it a different character."

The defendant contends that this same rule should control in assessing the damages for the down timber destroyed in the present action. In our view of the case, we do not deem it necessary to determine whether this rule would be applicable as between the owner of fallen timber and one through whose negligence it has been destroyed, that is, as between the owner and a tort feasor, for the determination of such question is not necessary to the decision of this case.

This brings us to the main questions involved. The plaintiff requested instructions in accordance with his theory of the case as above stated, namely, that the measure of his damages was the difference between the value of the timber as it was at the time of the fire and its value thereafter. The court properly refused this request, and upon the question of damages instructed the jury, in part, as follows:

"The difference in the value of the premises before the fire, including the timber thereon, and its value after the fire in the condition that it then was, would be the damages, if any, sustained by the plaintiff in this case. In other words, (and I want to be sure that I make myself plain in this regard), in determining plaintiff's damages, if any, you will compare the actual value of plaintiff's land with the trees and timber thereon just before the fire and before the trees were burned, with the actual value of the same premises after the fire and after the trees were burned. The difference in value will be the amount that plaintiff is entitled to recover in this action, if anything. Considerable evidence has been introduced during the trial of this case with reference to the condition of the tracts of land involved, the condition of the timber and the value of the particular kinds of timber on these tracts. This evidence was admitted as tending to aid you in reaching a conclusion upon the question as I have stated it to you, upon the question of the condition and value of the tracts before the fire and the condition and value of the tracts after the fire, and you will take into consideration all of the evidence in the case in reaching a conclusion in this regard."

This instruction states, we think, the true measure of damages which obtains where standing forest trees are destroyed or injured

by fire. Carner v. Chicago, St. P. M. & O. Ry. Co. 43 Minn. 375, 45 N. W. 713; Hayes v. Chicago, M. & St. P. Ry. Co. 45 Minn. 17, 47 N. W. 260; Hoye v. Chicago, M. & St. P. Ry. Co. 46 Minn. 269, 48 N. W. 1117, approved in Ward v. Chicago, M. & St. P. Ry. Co. 61 Minn. 449, 63 N. W. 1104; Hueston v. Mississippi & R. R. Boom Co. 76 Minn. 251, 79 N. W. 92, applying the doctrine in an action for the overflowing of lands; 3 Joyce, Damages, § 2134, and cases cited; 3 Sedgwick, Damages, § 933, and cases cited; Miller v. Neale, 137 Wis. 426, 119 N. W. 94; Mahaffey v. New York, 229 Pa. St. 285; the two cases last cited being very recent ones and likewise well considered. Furthermore, this instruction, we think, gives the plaintiff in full measure the benefit of his contention that he was entitled to recover for the destruction of the down timber in its then condition as it lay on the ground, as well as for the standing trees. 3 Joyce, Damages, § 2134.

It is true that the court subsequently in its charge stated the rule of damages in a more restricted form than as above quoted, and in language which, if taken literally and alone, that is, not in connection with the portion which we have quoted, might, perhaps, be considered as ignoring the fact that the evidence established that there was fallen timber on the land, of value at the time of the fire. If, however, such should be deemed to be its effect, it was the plaintiff's duty promptly to call the court's attention thereto, and to request a clarifying addition; and in the absence of such a request, there was no reversible error in this regard. 3 Dunnell, Minn. Dig. § 9798.

There was no error in the action of the trial court in admitting evidence as to the damage to and the value of the timber itself, as above indicated, and such action was not inconsistent with the rule of damages given in the instructions.

"In its last analysis," said Mr. Justice Mitchell (p. 255) in Hueston v. Mississippi & R. R. Boom Co. supra, "the measure of plaintiff's damages was the difference between the value of the premises immediately before and immediately after the infliction of the injury. Upon the trial, evidence was introduced of this ultimate fact, and also as to the nature and amount of the particular items of damage; as, for example, the nature and extent of the injury to the

mill machinery by the mud and water, the value of the use of the mill during the time it was shut down, the injury to the wall of the tail-race, and what it would cost to repair or restore the same, the extent and duration of the injury to the pasture land, and what the pasture in its former condition was reasonably worth. It is urged that this was admitting evidence under two different and separate methods or rules for the assessment of damages; that the plaintiff should have been compelled to adopt one or the other. On the contrary, we think the evidence was all admissible as tending to prove the same thing, viz., the damages to the premises by reason of the trespass. It is the most common thing in the world, in the trial of actions of this and analogous classes, to ask a witness how much less, in his opinion, the premises were worth after the injury than they were before, and then to particularize by introducing evidence as to the nature and extent of the different items which go to make up this estimated total diminution of value; and we never before heard this method of proving damages objected to."

To the same effect, see Miller v. Neale, 137 Wis. 426, 119 N. W. 94, which was an action for injury to standing timber by fire. "Nor was it error to admit proof of the damage to the timber itself," said the court. "While such proof does not determine the measure of the damages, it was entirely legitimate proof and entitled to be considered by the jury in fixing the diminished value of the land."

That the trial court in the instant case admitted the evidence of the value of the timber itself, upon the theory and for the purpose upon and for which such evidence was held admissible in the two cases last above referred to, is manifest from the latter part of the above quoted instruction.

The plaintiff finally insists that the damages allowed were so manifestly insufficient that it is apparent that they were awarded under the influence of passion or prejudice, and that the trial court erred in not granting him a new trial on this ground. We cannot so hold. The trial court's opportunity to correctly pass upon this contention equals ours at least, and we cannot disturb his determination.

Order affirmed.